IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-430-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| JOHN TIMOTHY CANNON ) | |
| _____ ) | |

This matter is before the court on the defendant's third *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 1079, 1082).[2] The defendant claims that his health conditions and the conditions of confinement at the BOP warrant consideration of his release from prison.

The government has responded in opposition, arguing that none of the positions advanced by the defendant have merit. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant has replied to the government's responses.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motions are respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] This court denied the defendant's first motion for compassionate release (ECF No. 1008) on the merits. The court denied the defendant's second motion for compassionate release (ECF No. 1070) without prejudice because the defendant had not exhausted his administrative remedies.

## STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement—United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants,

meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281–82, 284.  A court, therefore, remained "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended Guideline §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction.  The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions.  The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps.  First, the court determines whether extraordinary and compelling reasons support a sentence reduction.  Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission.  Finally, if the court finds that an extraordinary and compelling

reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

Although the government contends that the defendant has not exhausted his administrative remedies (ECF No. 1081 at 1), the defendant attests that he filed his original request for a reduction in sentence with the Warden on or around December 29, 2023 and no response was received. The court will give the defendant the benefit of the doubt and deem that he has exhausted his remedies. Accordingly, the court will proceed to review the motion

on the merits.

*The Defendant's Motion for Compassionate Release*

*A. Conditions of Confinement*

The defendant claims that the BOP has failed to provide him adequate medical care. He also alleges harsh prison conditions in the BOP that place him at a higher risk of illness to include: constant lock down, denial of access to inside or outside recreation, loss of commissary privileges, lack of items in the commissary, black mold, contaminated water, power outages, and violation of mail privileges. The government suggests that the defendant is asserting a violation of his Eighth Amendment rights and the court should decline to consider such arguments because Eighth Amendment claims should be presented in a *Bivens*[3] action, rather than a motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). This court agrees. If the defendant wishes to file a *Bivens* action, he must do so in the district of his confinement.

*B. The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible

---

[3] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

After November 1, 2023, § 1B1.13(B)(i) now provides that extraordinary and compelling reasons can exist if: (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease; or (II) an ongoing public health emergency declared by the appropriate federal, state or local authority. Fortunately, the threat of COVID has now greatly subsided and there does not exist at present an ongoing public health emergency declared by the appropriate federal, state or local authorities.

The defendant contends that he suffers from the following maladies: Type II diabetes, hypertension, hyperlipidemia, obesity, hepatitis C, a heart condition, and a recent serious case of gout. He also asserts that as a 70 year old man with these conditions, he satisfies the criteria of a serious medical condition, from which he will not recover from and place him

at a higher risk of serious illness when he next contracts COVID. He also complains that these conditions as a whole are not being treated effectively or as well as they would outside of prison.

In its responsive memorandum, the government points out that the defendant also suffers from chronic kidney disease, liver disease, and has a body mass index above 40. The government notes that the defendant has received both of the Moderna vaccines. He has previously contracted COVID-19 and recovered while incarcerated.

In its prior order of January 6, 2022 (ECF No. 1043), this court found that the defendant's then-current medical conditions, which included a number of issues which the CDC identified as representing a severe health risk, sufficed as an extraordinary and compelling reason for his release. Although the now-applicable policy statement cast doubt on the defendant's ability to use the above medical conditions as an extraordinary and compelling reason, the court will nevertheless assume the defendant has presented an extraordinary and compelling reason related to his health conditions.

However, after a review of the factors under 18 U.S.C. § 3553(a) and the defendant's post-sentencing conduct while incarcerated, in that prior order the court declined to grant the defendant's motion. That conclusion remains unchanged here. Taking the § 3553(a) factors in order, the court found, and still finds, as follows:

1. *Nature and Circumstances of the Offense.* In June 2014, the defendant and 11 others were charged in a 34-count Indictment. The defendant was charged with conspiracy

7

to possess with the intent to distribute 500 grams or more of cocaine (Count 1), in violation of 21 U.S.C. §§ 846, 841(b)(1)(B) and 851; and use of a telephone to facilitate the commission of a felony under the Controlled Substance Act (Counts 16, 18, 20, and 28), in violation of 21 U.S.C. §§ 843(b) and 843(d).

The government filed an Information notifying the defendant that he was subject to increased penalties pursuant to 21 U.S.C. § 851 based on the following convictions: conspiracy to distribute cocaine, 93-GS-32-2362, sentence date March 3, 1994; possession of cocaine, 1st, 97-GS-02-1322, sentence date January 20, 1998; possession with intent to distribute and distribution of 5 grams or more of crack cocaine, 3:02- 00351, sentence date January 6, 2003; and possession with intent to distribute and distribution of less than 5 grams of crack cocaine, 3:02-00351, sentence date January 6, 2003.

Following a jury trial in January 2017, the defendant was found guilty of conspiracy to possess with intent to distribute and distribution of 500 grams or more of a substance containing cocaine and four counts of use of a telephone communications facility, to facilitate the commission of a felony.

The evidence at trial revealed that the defendant was engaged in a wide-ranging conspiracy with multiple other individuals to possess and distribute cocaine throughout South Carolina. In connection with his offense, the defendant possessed firearms, maintained a stash house, utilized a communication facility to facilitate the drug trafficking crimes, and was responsible for either the purchase or distribution of 12.85 kilograms of cocaine.

The United States Probation Office prepared a Presentence Report (PSR) (ECF No. 756) and determined the defendant's total offense level at 34. With a criminal history category of III, his Guideline range was 188 to 235 months imprisonment. This court imposed a sentence of 224 months, consisting of 224 months on Count 1, and 48 months on the remaining Counts, with all terms to run concurrently.

The defendant thereafter took a direct appeal of his conviction and sentence, which was unsuccessful.[4] He also filed a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 which this court denied on the merits (ECF No. 970).

The defendant has served more than 108 months of his 224-month sentence. His projected released date is September 20, 2030. He is presently housed at Federal Correctional Institution Beckley.

2. *History and Characteristics of the Defendant*. The defendant is currently 70 years old. He is married and the father of one child. At the time of his sentencing in January 2017, the defendant was experiencing several physical and medical problems that continue to this day. At that time, he weighed 310 pounds and had been diagnosed with Hepatitis C, high blood pressure, diabetes, and acid reflux.

*Post Sentencing Conduct and Rehabilitation*

The defendant submits that he is considered a low risk for recidivism and has been a model inmate while at the USP Atlanta. He asks that his sentence be reduced to time

---

[4] See *United States v. Cannon*, 740 Fed. App'x 785 (4th Cir. 2018).

served.

While incarcerated, the defendant has not incurred any disciplinary infractions. Although he has not provided any recent information on his education or work history at the BOP, at the time of this court's last order the defendant had taken approximately seven vocational and educational courses which include attempting to attain his GED, fitness and wellness, personal finance, job interviews/resumes, and related courses.

In another of his pending motions for a reduction of sentence pursuant to Amendment 821 of the U.S. Sentencing Guidelines, the government notes in its response (ECF No. 1098) that the defendant did, in fact, lose 41 days of good time credit (GTC) as a result of his April 2023 possession of a hazardous tool, that is, a cell phone (Level 108 offense). Otherwise, he has accrued 445 days of GTC.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

As indicated above, the defendant was convicted following a jury trial of the possession and distribution of a significant quantity of a serious controlled substance which is a major problem in the District of South Carolina. His criminal history is extensive. Most of the medical conditions about which he complains of today existed when he committed the crimes for which he was convicted.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as a key factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

CONCLUSION

The court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties under the recent changes in sentencing laws and amendments to the Guidelines.

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical

conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[5] (ECF Nos.1079, 1082).

    IT IS SO ORDERED.

August 22, 2024                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge

---

[5] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")